[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12811

_____

D.C. Docket No. 0:06-cv-61851-UU

FEDERAL TRADE COMMISSION,

Plaintiff - Appellee,

versus

RANDALL L. LESHIN,
RANDALL L. LESHIN, P.A.,
d.b.a. Express Consolidation, et al.,

Defendants - Appellants,

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 5, 2013)

Before BARKETT and MARCUS, Circuit Judges, and CONWAY,* District Judge.

MARCUS, Circuit Judge:

---

* Honorable Anne C. Conway, Chief Judge, United States District Court for the Middle District of Florida, sitting by designation.

This appeal presents an issue of first impression: whether a district court can convert the unpaid remainder of an equitable disgorgement remedy, stemming from a compensatory civil contempt sanction, into the legal remedy of a money judgment after the contemnor has disgorged as much money as he currently has the ability to pay. While this case is unusual, as the lack of precedent on the subject indicates, we conclude that the district court acted within the bounds of its broad discretion and, therefore, affirm.

I.

The underlying dispute that has given rise to this latest appeal is detailed in this Court's previous opinion in FTC v. Leshin, 618 F.3d 1221, 1227-31 (11th Cir. 2010) ("Leshin I"). The FTC sued Randall Leshin and his co-appellants (collectively referred to in this opinion as "Leshin") based on deceptive marketing practices and other violations of the Federal Trade Commission Act committed by Leshin's debt-consolidation business. The parties settled the action, and the district court entered a stipulated injunction embodying that settlement in 2008. In 2009, based on Leshin's violations of the terms of that injunction, the district court held Leshin in civil contempt. As a compensatory civil contempt remedy, the district court ordered disgorgement of the gross receipts of Leshin's business during the relevant timeframe, which amounted to $594,987.90. Significantly, as part of its disgorgement order, the district court said that, "After disgorgement and any

2

attendant contempt enforcement are complete, the FTC may apply to the Court to convert any unpaid balance of this civil contempt remedy to a money judgment."

On appeal, a panel of this Court affirmed the district court's finding of contempt based on Leshin's multiple violations of the terms of the stipulated injunction. Leshin I, 618 F.3d at 1232-37. The Court also affirmed the district court's power, in a civil contempt proceeding, to require disgorgement of the business's gross receipts rather than only its profits, along with the district court's method of calculating those receipts to produce the $594,987.90 figure that Leshin owed. Id. at 1237-38. Leshin also argued that the disgorgement of gross receipts rendered the sanction punitive, transformed the proceedings from civil to criminal contempt, and triggered his right to a jury trial. The panel rejected this claim too because the sanction remained compensatory and hence was civil in nature. It further held that Leshin had received due process because he had both notice and an opportunity to be heard. Id. at 1238-39. Finally, Leshin raised the issue now before us. Since the FTC had not yet applied to convert the disgorgement order into a money judgment, however, the panel in Leshin I found that the question of whether the district court had the power to convert an equitable remedy into a money judgment was not ripe for adjudication. See id. at 1239-40.

After losing his first appeal, Leshin failed to disgorge the roughly $590,000 required by the district court's first order of civil contempt. The district court then

3

found him to be in contempt still again (this time, to be precise, in contempt of the disgorgement order) and ordered him to pay $92,671 -- the total amount that the court found that he was then able to pay -- or face jail time. Notably, this second contempt proceeding was <u>coercive</u> in nature, not compensatory, and Leshin purged the second contempt by paying the $92,671. The original disgorgement order, less the $92,671, remained in effect.

The FTC subsequently moved to convert the remainder of the original disgorgement order, which was roughly $500,000, into a money judgment. The district court referred this matter to a magistrate judge, who recommended granting the FTC's motion. Leshin objected, but to no avail; the district court adopted the magistrate's report and recommendation and granted the FTC's motion. The district court elaborated on its reasons for granting the motion, beginning with the observation that it possessed "broad, inherent authority to remedy civil contempt." As for Leshin's argument that the district court could not convert the equitable remedy into a legal one, the court found no basis for this assertion, as "[t]he only requirement is that the sanction be compensatory," and Leshin had "cite[d] no authority for [his] argument that legal remedies are beyond the Court's reach in fashioning civil contempt sanctions." The district court was also unpersuaded by Leshin's suggestion that the imposition of a money judgment would require a jury trial; since the money judgment arose out of a compensatory civil contempt

4

proceeding, all that due process required was that Leshin receive notice and the opportunity to be heard. The district court finally rejected Leshin's claim that his contempt necessarily came to an end when he no longer had an ability to pay, since that rule applied primarily to "coercive contempt sanctions, but not compensatory contempt sanctions." The district court therefore entered a money judgment of $502,316.90 against Leshin.

Leshin timely appealed.

## II.

"We review the remedial relief granted as a contempt sanction for an abuse of discretion." Leshin I, 618 F.3d at 1231 (citing McGregor v. Chierico, 206 F.3d 1378, 1388 (11th Cir. 2000)). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." Thomas v. Blue Cross & Blue Shield Ass'n, 594 F.3d 814, 821 (11th Cir. 2010) (internal quotation marks omitted).

## A.

The core of Leshin's appeal is his argument that the district court abused its discretion by converting the unpaid remainder of its disgorgement order, an equitable remedy, into a money judgment, a legal remedy. We begin with the observation that the original disgorgement order arose out of civil contempt, an

5

area where the district court has extremely broad and flexible powers. There is no dispute that Leshin was in contempt of the stipulated injunction. Therefore, the district court had "wide discretion in fashioning an equitable remedy for [Leshin's] civil contempt." McGregor, 206 F.3d at 1385 n.5 (citing United States v. City of Miami, 195 F.3d 1292, 1298 (11th Cir. 1999)). "[S]anctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC, 478 U.S. 421, 443 (1986) (internal quotation marks omitted). A coercive contempt sanction comes with some limitations; for instance, once a contemnor's contumacious conduct has ceased or the contempt has been purged, no further sanctions are permissible. See Leshin I, 618 F.3d at 1239 ("A contemnor need only be afforded the opportunity to purge his sanction of a fine, in the civil context, where a fine is not compensatory."). On the other hand, we have repeatedly stressed that "the district court's discretion in imposing non-coercive sanctions is particularly broad and only limited by the requirement that they be compensatory." Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1521 (11th Cir. 1990); see also Leshin I, 618 F.3d at 1239. Indeed, the Supreme Court has observed that district courts possess particularly expansive and flexible powers in these circumstances: "The measure of the court's power in civil contempt proceedings is determined by

6

the requirements of full remedial relief." McComb v. Jacksonville Paper Co., 336 U.S. 187, 193 (1949); cf. AT&T Broadband v. Tech Commc'ns, Inc., 381 F.3d 1309, 1316 (11th Cir. 2004) ("[W]hen the public interest is involved . . . , [the district court's] equitable powers assume an even broader and more flexible character." (alterations in original) (internal quotation marks omitted)).

At the outset of the contempt proceedings, on this record, the district court could have granted a money judgment, rather than a disgorgement order, as the remedy for Leshin's civil contempt. We know this because, for one thing, Leshin conceded this point both in his briefs and at oral argument. In his initial brief, Leshin said, "The FTC could have sought a contempt sanction of a compensatory money judgment, but instead specifically asked for disgorgement." His reply brief reiterated this concession: "The FTC says that the district court could have entered a money judgment all along. Defendants do not dispute that assertion." Leshin is right that the district court could have done so. Although we have found no case squarely on point, the Supreme Court and at least one court of appeals have acknowledged that a court can issue a money judgment as a remedy for civil contempt. See De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 220 (1945) (containing dicta regarding "process which conceivably may be issued for satisfaction of a money judgment for contempt" (emphasis added)); In re Prof'l Air Traffic Controllers Org., 699 F.2d 539, 542 (D.C. Cir. 1983) (describing how one

7

party "registered its three civil contempt money judgments" (emphasis added)).

Moreover, the district court's decision to grant a money judgment would have

accorded with the general equitable principle (albeit one rarely invoked) that

"where the aggrieved party shows entitlement to equitable relief, but a grant

appears to be impossible or impracticable, the court may nevertheless proceed with

the case . . . , awarding damages or a money judgment in lieu of the requested

equitable remedy." Millsap v. McDonnell Douglas Corp., 368 F.3d 1246, 1265

(10th Cir. 2004) (emphasis added) (internal quotation mark omitted).

If the district court could have granted either disgorgement or a money

judgment as a remedy for Leshin's civil contempt, we are at a loss to see why the

district court lacked the power to grant both the equitable remedy and the legal one

so long as it did not permit double recovery. Thus, at the front end of this

controversy the district court could have granted a disgorgement order covering

some proportion of the total compensatory award and a money judgment for the

remainder. While this bifurcation of remedies would be unusual, courts in other

contexts regularly grant both equitable and legal relief. The most common

combination of equitable and legal remedies, for instance, is a district court's grant

of both an injunction that prevents future harm along with an award of damages

that compensates for past harm. See, e.g., Proudfoot Consulting Co. v. Gordon,

576 F.3d 1223, 1232 (11th Cir. 2009).  A court may also grant an aggrieved party

8

both specific performance of a contract along with damages resulting from the defendant's delay in performing his obligations under that contract. See Bracken v. Atlantic Trust Co., 55 N.Y.S. 506, 511 (N.Y. App. Div. 1899). Copyright infringement suits provide still another example; a victorious plaintiff may receive both disgorgement and expectation damages. See Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 546 (4th Cir. 2007) ("[A] copyright holder is entitled to both actual damages -- the market price of the license -- and disgorgement of the infringer's profits . . . ."). If the district court had the power to grant either or both the equitable and the legal remedy in the first place, then there is no reason we can discern why it would be barred from converting its disgorgement order into a money judgment in order to satisfy "the requirements of full remedial relief." McComb, 336 U.S. at 193. And Leshin has failed to cite a statute, case, or legal principle that restricted the district court from doing so.

Leshin asserts, nonetheless, that once the FTC asked the district court for, and received, the disgorgement order, it could no longer ask for a money judgment to replace that disgorgement order. In essence, Leshin is saying that the district court's order runs afoul of the election of remedies doctrine. The doctrine of election of remedies, however, does not automatically bar a complainant from obtaining multiple forms of relief. Rather, the rule limits a party with the choice of two remedies that are "inconsistent with each other" from obtaining both remedies

9

or from obtaining first the one remedy and then, at a later date, an alternative one. See A. Klipstein & Co. v. Grant, 141 F. 72, 72 (5th Cir. 1905).[1] Remedies are inconsistent if they provide "double recovery for the same injury," MCA Television Ltd. v. Pub. Interest Corp., 171 F.3d 1265, 1274 (11th Cir. 1999), or rely on sets of facts that are inconsistent with one another, see Roberts v. Sears, Roebuck & Co., 573 F.2d 976, 985 (7th Cir. 1978). Thus, for example, a party who establishes the breach of a contract for the sale of land may obtain specific performance or expectation damages (i.e., the difference between the market price and the sale price); but the party must elect either the equitable remedy or the legal one, since receiving both would effectively give that party twice the benefit of its bargain. See, e.g., Mycogen Corp. v. Monsanto Co., 51 P.3d 297, 307 (Cal. 2002). If a party has obtained full satisfaction of the judgment by means of one remedy, then it can no longer seek alternative ones that were originally available. Cf. Princeton Homes, Inc. v. Virone, 612 F.3d 1324, 1334 n.6 (11th Cir. 2010) (rule under Florida law is that "the doctrine of election of remedies only applies after one of the remedies has been satisfied"). In this case, the district court's conversion of the remainder of the disgorgement order into a money judgment does not run afoul of the election of remedies doctrine. Plainly, the two remedies are not

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

10

inconsistent -- they rely on precisely the same set of facts -- and do not allow double recovery; the roughly $90,000 that the FTC obtained under the disgorgement order has been deducted from the original contempt award, and the money judgment covers only the remainder.[2]

Leshin levels several other objections, all of which are unavailing. Leshin argues at length that the money judgment represents a serial contempt finding or new liability, and that he had already purged the entirety of his original civil contempt by paying the $90,000. However, this claim is based on a misreading of the record. What Leshin purged was the second, coercive contempt sanction entered on March 8, 2011, which the district court entered after Leshin failed to comply with the disgorgement order that was the result of the earlier, compensatory civil contempt proceeding. The district court has repeatedly made this point, stating in one order that "Defendants complied with the Court's March 8, 2011 Order and have purged themselves of the finding of civil contempt set forth therein," and in another that "[t]he Contempt Defendants then wired $92,671.00 to Plaintiff, thereby purging themselves of their second contempt."

---

[2] Leshin attempts to argue that the two remedies are inconsistent because they allow the FTC to attack Leshin's assets in different ways. The disgorgement order gave the FTC access to otherwise exempt assets, while the money judgment is enforceable by a writ of execution. But the fact that the two remedies are different does not mean they are incompatible or inconsistent with each other; indeed, to the extent that the conversion of the remedies gives the FTC another means of obtaining the full amount awarded, the two remedies are actually complementary. The disgorgement and the money judgment would be inconsistent if they relied on inconsistent facts or if they allowed for double recovery, MCA Television Ltd., 171 F.3d at 1274, but Leshin has never made those claims, nor could he.

(Emphasis added). The district court never said that Leshin had purged the compensatory civil contempt finding or relieved Leshin of the obligation of paying the balance of the $590,000 disgorgement order.

Leshin further objects for two overlapping reasons. According to Leshin, "[i]f the contemnor pays the compensatory sanction, to the extent he has the ability to comply with that sanction, the contempt is purged." Second, "[a]t some point contempt, particularly civil contempt, simply must come to an end." In support of the second point, which is stated only at the highest order of abstraction, Leshin cites to Lance v. Plummer, 353 F.2d 585, 592 (5th Cir. 1965), where the former Fifth Circuit stated that "since sanctions imposed in civil contempt proceedings must always give the alleged contemnor the opportunity to bring himself into compliance, the sanction cannot be one that does not come to an end when he repents his past conduct and purges himself." However, Leshin fails to grapple with the difference between compensatory civil contempt sanctions and coercive civil contempt sanctions. To be sure, for a coercive sanction, ability to pay is a complete defense. See Maggio v. Zeitz, 333 U.S. 56, 71-74 (1948); Newman v. Graddick, 740 F.2d 1513, 1524-25 (11th Cir. 1984) (where contempt is "designed to compel a person to do what the court has ordered him to do," then the contemnor "must be given the opportunity to bring himself into compliance," and "inability to comply is a complete defense"). It is futile to punish defendants in an

12

attempt to compel them to do that which they cannot do. In contrast, for a compensatory civil contempt sanction, "in order to purge themselves of contempt," defendants must "pay the damages caused by their violations of the decree." Clark v. Boynton, 362 F.2d 992, 998 (5th Cir. 1966) (internal quotation mark omitted). In other words, the contempt ends when the contemnor pays the full amount.

For a compensatory contempt sanction, in contrast to a coercive one, inability to pay is no defense. This Court made this point clearly in Leshin I, see 618 F.3d at 1239 ("A contemnor need only be afforded the opportunity to purge his sanction of a fine, in the civil context, where a fine is not compensatory."), and it is consistent with the general rule that a disgorgement order "establishes a personal liability, which the defendant must satisfy regardless whether he retains the . . . proceeds of his wrongdoing." SEC v. Banner Fund Int'l, 211 F.3d 602, 617 (D.C. Cir. 2000). The reasons that the D.C. Circuit elaborated upon in Banner Fund apply with equal force in this context:

> To hold, as [Defendant] maintains, that a court may order a defendant to disgorge only the actual assets unjustly received would lead to absurd results. Under [Defendant's] approach, for example, a defendant who was careful to spend all the proceeds of his fraudulent scheme, while husbanding his other assets, would be immune from an order of disgorgement. [Defendant's] would be a monstrous doctrine for it would perpetuate rather than correct an inequity.

Id. Quite simply, Leshin's obligation to pay has not been extinguished by his inability to do so.[3]

In sum, while the district court's conversion order is unusual, the court did not abuse its considerable discretion. The district court merely did what it could have done from the beginning of the contempt proceeding: it granted a compensatory contempt remedy in the form of a money judgment. The conversion did not run afoul of the election of remedies doctrine because it only covered the unpaid remainder of the disgorgement order. Leshin's objections fail because they rely either on misreading the record or conflating the distinct principles governing compensatory and coercive contempt sanctions.

B.

---

[3] Leshin's remaining arguments are even farther off the mark. He argues that there is "Catch-22" language in the original disgorgement order, which says that the FTC may apply to convert the disgorgement remedy into a money judgment only after contempt enforcement is complete. According to Leshin, this presents a paradox: if contempt enforcement is complete, then how can there be anything that remains to be converted into a money judgment? A quick glance at the record resolves this problem. The order actually states, "After disgorgement and any attendant contempt enforcement are complete, the FTC may apply to the Court to convert any unpaid balance of this civil contempt remedy to a money judgment." Leshin omits the word "attendant," which alters the meaning of the entire pronouncement and makes it appear as if the district court was telling the FTC to seek a money judgment after all contempt enforcement was complete. Read in its proper context, the district court actually indicated that the FTC could apply for a money judgment after exhausting all means of enforcement attendant to -- that is, related to -- the disgorgement order. That is precisely what occurred here.

Finally, Leshin objects to the conversion because it fails to contain "disbursement requirements to consumers." It is unclear whether Leshin can even bring this claim, which alleges harm to the consumers rather than to himself. In any event, however, the district court's conversion of the remedy from disgorgement to a money judgment did not modify or supersede the disgorgement order's specific provisions ordering the FTC to disburse the money to consumers. Therefore, even to the extent that Leshin could make this argument, the record does not support it.

Leshin also argues on appeal that the district court violated the tenets of due process and his right to a jury trial under the Seventh Amendment of the Constitution. We remain unpersuaded. In the first place, the district court's decision of what remedy to grant did not alter the <u>source</u> of Leshin's obligation to pay, which stemmed from a civil contempt finding. It is by now well-settled law that due process is satisfied when a civil contempt defendant receives notice and an opportunity to be heard -- both of which Leshin has undeniably been provided. <u>See</u> <u>Int'l Union, United Mine Workers of Am. v. Bagwell</u>, 512 U.S. 821, 827 (1994) ("[C]ivil contempt sanctions . . . are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required."); <u>Shillitani v. United States</u>, 384 U.S. 364, 365 (1966). Second, Leshin has already argued that he should have received a jury trial in <u>Leshin I</u>, and this Court squarely rejected the claim. <u>See</u> 618 F.3d at 1238-39. We are bound by the law of the case doctrine to follow the prior panel's holding in the first appeal. <u>Burger King Corp. v. Pilgrim's Pride Corp.</u>, 15 F.3d 166, 169 (11th Cir. 1994) ("[F]indings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial or on a later appeal." (internal quotation marks omitted)).

Leshin attempts to sidestep all of this, again arguing that the money judgment cannot be a product of the underlying contempt finding, which he purged, but rather amounts to a new judgment of liability. Leshin also says that the district court's conversion of the monetary award rendered him liable for an amount that exceeded his unlawful gain and had therefore become punitive rather than compensatory. These claims are unavailing.

Leshin's first argument cannot help his cause because, as we have already explained, Leshin purged only the second, <u>coercive</u> contempt finding by paying the $90,000. Notably, he did not erase his obligation to pay the $500,000 balance of the disgorgement order, which was a product of the original <u>compensatory</u> contempt proceeding. Leshin already disputed the amount of the sanction stemming from that compensatory contempt proceeding in his first appeal to this Court. But the panel in <u>Leshin I</u> found that the district court had not abused its discretion by "requir[ing] disgorgement of gross receipts, even though the consumer received some value from the product or service." 618 F.3d at 1237. We remain bound by the prior panel's holdings. Since the panel already held that gross receipts were the proper measure of compensation for Leshin's contempt, he cannot now complain that the money judgment -- which is merely a modification of the form of the relief arising from that original contempt finding -- is improper on due process grounds.

16

The same reasoning applies to Leshin's claim that the district court's sanctions amount to criminal contempt rather than civil contempt. Leshin insists that since the district court has already determined his ability to pay, and since he has paid that amount, the original disgorgement amount was not truly compensatory. In the first place, Leshin has already litigated this claim and lost. Leshin I concluded that "[t]he order to disgorge all fees collected in violation of the injunction is a civil sanction for contempt." 618 F.3d at 1239 (emphasis added). It was "remedial in nature," "attempt[ed] to restore the status quo before the contempt defendants" violated the injunction, and was "imposed to compensate consumers for the losses they sustained." Id. Thus, this Court concluded that "[t]he district court did not deprive the contempt defendants of due process. The contempt defendants were afforded notice and an opportunity to be heard." Id. These pronouncements form the law of the case. Moreover, Leshin is laboring under the erroneous view that the extent of his ability to pay was the extent to which the contempt was truly compensatory in nature. But, as we've said, this theory makes little sense, for then defendants who dissipated their ill-gotten gains would have to compensate the victims nothing at all. The outer limit of a compensatory sanction is "all fees collected in violation of the injunction," an amount already determined in this case to be roughly $590,000. Leshin I, 618 F.3d at 1239. Only if the district court required more than that amount would it have

17

violated the principle that civil contempt must be compensatory or remedial in nature. Yet the district court only entered a money judgment for the unpaid portion of a sum that Leshin undeniably owes, one way or the other. Leshin is not entitled to a jury trial on this contempt proceeding.

AFFIRMED.