[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14072
_____

D.C. Docket No. 1:10-cv-03547-TCB


RES-GA COBBLESTONE, LLC,
RES-GA MILLS COVE, LLC,

                                        Plaintiffs - Appellees,

versus

BLAKE CONSTRUCTION AND DEVELOPMENT, LLC,
COBBLESTONE AT IVY, LLC,
WELLINGTON LAKE ESTATES, LLC,
MOUSTAFA MOKHEMAR,
SEASE CONSTRUCTION LLC, et al.,

                                        Defendants,

GRADY A. ROBERTS, III,

                                        Defendant - Appellant,

ROBERTS LAW, LLC,

                                        Interested Party - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

Before JORDAN and KRAVITCH, Circuit Judges, and HORNBY,[*] District Judge:

KRAVITCH, Circuit Judge:

Grady A. Roberts, III, and his law firm Roberts, LLC, (collectively Roberts) challenge the district court's orders directing Roberts to pay a $2,000 fine, $57,000 in contempt sanctions, and the appellees' costs and fees to the tune of $55,571.76, along with an order directing that Roberts be incarcerated for civil contempt. After this appeal was briefed, however, the parties signed a consent order in which Roberts agreed to pay some of the fees and sanctions imposed as a result of his conduct in the district court in exchange for relief from the others. The same day, Roberts paid as promised and was released the following day from the remainder of the judgments he appeals. In so doing, we conclude that Roberts mooted his appeal. Therefore, we dismiss this appeal for want of subject matter jurisdiction.

I.

RES-GA Cobblestone, LLC, and RES-GA Mills Cove, LLC, (collectively Cobblestone) sued Roberts and several others in Fulton County Superior Court alleging state-law claims related to property Cobblestone purchased at a

---

[*] Honorable D. Brock Hornby, United States District Judge for the District of Maine, sitting by designation.

2

foreclosure sale.  After a hearing, the state court enjoined Roberts and his state-court co-defendants from coming within 1000 yards of the foreclosed properties. Two and a half weeks later, Cobblestone told the court that Roberts and the others continued to occupy some of the properties and collect rent from tenants, so the state court scheduled a contempt hearing and ordered Roberts to appear.  Rather than complying, Roberts removed the case to federal district court that same day. Because the notice of removal was frivolous on its face, however, the district court promptly remanded.[1]

The following day, the state court rescheduled the contempt hearing, but Roberts immediately filed yet another frivolous notice of removal to halt the state proceedings.  Once again, the district court promptly remanded the case but retained jurisdiction to award Cobblestone its costs and fees because the removal was "not objectively reasonable" and directed Roberts to "show cause in writing how he and his law firm ha[d] not violated Rule 11(b) and why the Court should

---

[1] Roberts asserts that both notices of removal could possibly have been supportable on theories he never asserted in the district court and, thus, the district court was incorrect to conclude they were frivolous and filed for an improper purpose.  Even assuming Roberts's newly minted theories could have justified removal, the notices themselves were still frivolous.  A notice of removal must, under penalty of Rule 11 sanctions, "contain[] a short and plain statement of the grounds for removal . . . ."  28 U.S.C. § 1446(a).  On the faces of the notices, the first contravened the forum defendant rule contained in the removal statute itself, 28 U.S.C. § 1441(b)(2), and the second relied upon a theory of jurisdiction (that a federal defense to state claims confers federal question jurisdiction) that has been rejected for well over 125 years, a fact taught in every first-year civil procedure course.  *E.g.*, *Central R. Co. of N.J. v. Mills*, 113 U.S. 249, 257 (1885) ("The question whether a party claims a right under the constitution or laws of the United States is to be ascertained by the legal construction of its own allegations, and not by the effect attributed to those allegations by the adverse party.").  None of the assertions Roberts made to the district court regarding federal subject matter jurisdiction were "arguable" or colorably in "good faith."  Objectively, Roberts could not genuinely have believed the grounds he asserted even arguably supported removal if he conducted the "inquiry reasonable under the circumstances" Federal Rule of Civil Procedure 11(b) and 28 U.S.C. § 1446 required him to conduct. Thus, the notices he filed were facially frivolous.

3

not impose sanctions." Cobblestone filed an itemization of its costs and fees, to which Roberts did not object even though the district court expressly gave him leave to do so.[2] Instead, he filed a new lawsuit in federal court against the state court judge and Cobblestone's lawyer, a copy of which he delivered to them at the third rescheduled state contempt hearing. Agreeing with the state court, the district court found Roberts's conduct "outrageous and unprofessional" and "profoundly disturbing to any person who believes in the rule of law." On December 2, 2010, the district court dismissed Roberts's newly filed suit, rejected his bald assertion that his actions were mere good-faith mistakes, fined him $2,000 under Rule 11 and the court's inherent power, and ordered him to pay $15,320.01 in Cobblestone's costs and attorneys' fees within 10 days pursuant to 28 U.S.C. §§ 1447(c) and 1927.

When two weeks passed and Roberts had not yet complied, the district court ordered him to do so by December 30 or appear on January 7, 2011, to show cause why he should not be held in contempt. On January 6, Roberts filed papers admitting that he still had not complied but swearing he was financially unable to do so. The next day, as promised, the district court held a hearing to permit Roberts to explain himself. Roberts, however, failed to appear, so, as promised, the district court held him in contempt.

---

[2] The district court consistently permitted Roberts to contest the reasonableness of the costs and fees Cobblestone averred it incurred as a result of Roberts's behavior, but he never did so.

On January 19, relying upon its inherent power, the district court ordered Roberts to pay $6,305.18 in further costs and fees Cobblestone had incurred in preparing for the show-cause hearing Roberts had skipped and otherwise seeking Roberts's compliance with the December 2 order. The court also imposed a daily fine of $250 each on both Roberts and his firm until Roberts fully complied. The order gave Roberts until February 2 to comply in full or else appear to be incarcerated for civil contempt.

But Roberts did not comply and yet again did not appear. As a result, the court issued a bench warrant for Roberts's arrest. Roberts, in response, filed a petition for bankruptcy attempting to stay execution of the warrant, which the bankruptcy court quickly dismissed as improper for several reasons. Roberts was briefly detained, but the district court vacated the warrant after Roberts agreed to allow discovery into his financial ability to comply with the court's orders.

After discovery concluded, the district court ruled on May 16, 2011, that Roberts remained in contempt. The court found the evidence indicated that Roberts had assets he could tap to comply with its orders but had simply stonewalled inquiry into his asserted inability to pay. Therefore, relying upon its inherent authority, the court ordered him to pay Cobblestone the $33,946.57 in costs and fees it had incurred conducting discovery and contending with Roberts's obfuscation, in addition to those costs and fees the court previously had awarded.

5

Also based upon its inherent authority, the court ordered Roberts to pay $59,000 in sanctions, consisting of the accumulated value of the $250 per day fine from the January 19 order and the $2,000 fine the court ordered that he pay on December 2. Finally, the court ordered the United States Marshal to arrest and detain Roberts "until he and Roberts Law purge[d] themselves of contempt." Cobblestone sought an entry of judgment, which the district court granted, directing Roberts to pay Cobblestone the sum total of $55,571.76 in costs and fees plus post-judgment interest.

Roberts then filed this appeal. He attacks the district court's December 2, January 19, and May 16 costs-and-fees awards to Cobblestone.[3] And he challenges the $2,000 fine the district court imposed upon him, as well as the $57,000 in *per diem* contempt sanctions the district court ordered him to pay.[4] Roberts concedes, however, that his challenge to the order that he be incarcerated for contempt is moot.

After this appeal was filed, Roberts and Cobblestone continued to litigate extensively in the district court and in several other related appeals Roberts filed (all of which have since been dismissed). Roberts was ultimately incarcerated for civil contempt on March 12, 2012, 10 months after the second warrant for his arrest issued. In a flurry of proceedings that followed, Roberts filed for bankruptcy

---

[3] Technically, the final amount of the May 16 costs-and-fees award was not fixed until June 16, 2011.
[4] Roberts contends the district court made repeated procedural errors during the proceedings. Those challenges, however, are moot for the same reasons his direct challenges to the sanctions, costs, and fees themselves are moot.

again (which was again dismissed as filed for an improper purpose)[5] and, after

concluding Roberts remained in contempt for evading arrest and avoiding payment

of Cobblestone's costs and fees, the district court held Roberts's attorney in

contempt and imposed on him a fine payable to Cobblestone.

On May 7, 2012, after this appeal was fully briefed, counsel for

Cobblestone, Roberts's counsel, and Roberts himself, on his own behalf and for his

law firm, signed a consent order, which the district court entered.  Under that

judgment, Roberts agreed to pay the $2,000 fine originally ordered on December 2,

2010, into the court's registry and $55,571.76 to Cobblestone in attorneys' fees and

costs.  Cobblestone agreed to accept that amount, forgoing its entitlement to the

accrued post-judgment interest on the costs-and-fees award and the contempt

award against Roberts's counsel.[6]  Provided Roberts complied, the order directed

that he be released from custody and relieved from payment of the $57,000 in

contempt sanctions he had racked up based upon the $250 per day fine.  As part of

the agreement, Roberts also promised to dismiss a related appeal filed in this case

---

[5] Roberts's counsel asserted at oral argument that he agreed to dismiss the bankruptcy petition as part of the consent order entered on May 7, 2012.  But the consent order says nothing whatsoever about any bankruptcy case.  And, although Roberts's motion initiated the dismissal, the bankruptcy court in its dismissal order explicitly noted the impropriety of Roberts's petition.

[6] Roberts asserted at oral argument, without explanation, that a judgment in favor of Cobblestone accruing interest remained outstanding and, therefore, that this appeal cannot be moot.  Although the district court previously made an express award of post-judgment interest, however, it did not award Cobblestone the amount of that interest in the consent order and did not indicate that Cobblestone was entitled to any further post-judgment interest going forward from the date of entry.  And because Roberts has already paid the full amount to which Cobblestone was entitled under the consent order, there is no remaining amount upon which interest could be accruing.  *See* 28 U.S.C. § 1961(b) (interest ceases to accrue on "the date of payment").  In any event, Cobblestone expressly disavowed at oral argument (and therefore abandoned) any entitlement to post-judgment interest.  *See Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997) (stating that a party is bound by unambiguous concessions or waivers made at oral argument).

7

and to file a copy of the consent order in this appeal.  That same day, as required,

Roberts filed proof that he had complied in full.  Therefore, as promised, the

district court vacated the sanctions order against Roberts's counsel, held Roberts

had purged himself of contempt, and ordered the Marshal to release him from

custody.

Also as he had agreed to do, Roberts filed the consent order in this case.

Because it appeared to address all of the issues involved in this appeal, we directed

the parties to brief the jurisdictional impact of their agreement to and compliance

with the consent order.  After thorough review, and with the benefit of oral

argument, we conclude that this appeal is moot.

## II.

Federal courts operate under a continuing obligation to inquire into the

existence of subject matter jurisdiction whenever it may be lacking.  *Baltin v.*

*Alaron Trading Corp.*, 128 F.3d 1466, 1468 (11th Cir. 1997).  That obligation

continues through every stage of a case, even if no party raises the issue.  *Already,*

*LLC v. Nike, Inc.*, 568 U.S. — , 133 S. Ct. 721, 726 (2013).  "Whether we have

jurisdiction is a question of law, which we review *de novo*."  *San Francisco*

*Residence Club, Inc. v. 7027 Old Madison Pike, LLC*, 583 F.3d 750, 754 (11th Cir.

2009).  If jurisdiction is absent, then we are without power to proceed.  *Id.*

8

Article III of the United States Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies' . . . ." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. — , 133 S. Ct. 1523, 1528 (2013) (quoting U.S. Const. art. III, § 2). Where no legally cognizable interest is at stake between the parties, a case becomes moot "and therefore no longer a 'Case' or 'Controversy' for purposes of Article III . . . ." *Already, LLC*, 133 S. Ct. at 726. This is so "[n]o matter how vehemently the parties continue to dispute" the issues that animated the litigation. *Id.* at 727. "In our system of government, courts have 'no business' deciding legal disputes or expounding on law in the absence of such a case or controversy." *Id.* at 726 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).

### III.

We note at the outset that the district court did not have jurisdiction to enter the May 7, 2012, consent order as a judgment of the court. Because the issues the order addressed were either already before us in this appeal or inextricably intertwined with the parties' continued litigation of those issues, the district court was divested of jurisdiction over them. *See Doe v. Bush*, 261 F.3d 1037, 1064 (11th Cir. 2001) ("[A]s a general rule, the filing of a notice of appeal divests the district court of jurisdiction over those aspects of the case that are the subject of the appeal."). That, however, does not deprive the consent order, or more precisely Roberts's agreement to it and compliance with it, of legal effect.

9

First, because he complied with the orders underlying the district court's contempt adjudication and thereby purged himself of contempt, Roberts has rendered moot any contentions he may have had with respect to his contempt adjudication or the $57,000 in daily contempt sanctions.[7]  "In the context of purely coercive civil contempt, a contemnor's compliance with the district court's underlying order moots the contemnor's ability to challenge his contempt adjudication." *Chairs v. Burgess*, 143 F.3d 1432, 1435 (11th Cir. 1998) (internal quotation marks omitted).  "A long line of precedent holds that once a civil contempt order is purged, no live case or controversy remains for adjudication." *In re Grand Jury Subpoena Duces Tecum*, 955 F.2d 670, 672 (11th Cir. 1992) (internal quotation marks omitted).  "Once a contemnor has purged his contempt, he sacrifices his ability to challenge the merits of the underlying contempt order . . . ." *Id.* at 672-73.  Coercive civil contempt "sanction[s] cannot be contested on the merits if the contemnor complies with the district court's order while his appeal is pending." *Id.* at 673.  Roberts purged his contempt while this appeal was pending and, therefore, his challenges to the orders holding him in contempt and to the $57,000 coercive contempt fine are moot.

---

[7] Cobblestone contends we lack jurisdiction because — as the final amounts of sanctions, fees, and costs Roberts was ordered to pay were decided in December of 2010 and June of 2011 — Roberts's appeal from the court's August 2, 2011, judgment on September 1 was untimely. *See* Fed. R. App. P. 4(a).  Because we conclude that this appeal is moot, we do not address this alternative reason why we may be deprived of jurisdiction.

We lack jurisdiction over Roberts's challenge to the $2,000 fine the district court originally ordered him to pay on December 2, 2010, for much the same reason. That fine was a sanction the court imposed based both upon its authority under Rule 11 and its inherent authority to sanction a litigant's bad-faith actions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (explaining federal courts' inherent authority to impose sanctions). Roberts paid it in full. We have long recognized that the payment of a civil fine, at least where there is no objective manifestation it is conditional, renders moot any appeal of the sanction. *E.g.*, *In re Stewart*, 571 F.2d 958, 966 (5th Cir. 1978) [8] (stating that, in civil contempt cases, "we have held that the payment of a fine renders a contempt case moot"); *Tessmer v. United States*, 328 F.2d 306, 307 (5th Cir. 1964) (holding appeal moot where fine was paid). Roberts's retreat to cases in which other circuits have held that an appellant does not moot his appeal by complying with a contempt order or paying a fine levied against him, *e.g. Corely v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1057-58 (7th Cir. 1998), is unavailing. Our law is clearly to the contrary, and we are bound by it. *See World Holdings, LLC v. Fed. Republic of Germany*, 701 F.3d 641, 649-50 (11th Cir. 2012).

Finally, Roberts's appeal of the orders that he pay Cobblestone's costs and fees is moot because Roberts voluntarily signed and complied with what amounts

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

11

to a settlement agreement on the issue in exchange for the discharge of the remainder of the sanctions, including the post-judgment interest and contempt sanctions from his attorney that Cobblestone was owed under the district court's orders.  Payment of a judgment and an acknowledgement of satisfaction will moot an appeal from the judgment.  *Fidelcor Mortg. Corp. v. Ins. Co. of N. Am.*, 820 F.2d 367, 370 (11th Cir. 1987).  The appellant's subjective intent to continue an appeal is irrelevant.  *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 518 F.3d 1302, 1307-08 (11th Cir. 2008); *see also Already, LLC*, 133 S. Ct. at 727.  What matters is whether the parties' actions objectively manifest an intent to abandon the issues on appeal.  *Alvarez Perez*, 518 F.3d at 1307.

Here, Roberts's actions mooted his appeal.  He signed an order with Cobblestone memorializing their mutual intent that he be permitted to comply with some of the sanctions he challenges on appeal in exchange for relief from the rest. Then, Roberts complied in full with the agreement he signed, and Cobblestone accepted less than what it was entitled to demand.  Moreover, Roberts never purported to reserve the right to continue to pursue this appeal.  *See Ass'n for Disabled Ams., Inc. v. Integra Resort Mgmt., Inc.*, 387 F.3d 1241, 1243 (11th Cir. 2004) (reasoning that express reservation of a cognizable issue for appeal is relevant to deciding if payment of a judgment constitutes an objective manifestation of abandonment sufficient to moot an appeal).  Indeed, he agreed to

12

file the consent order indicating that the parties had reached a resolution *in this appeal*.

Nothing in the order Roberts and Cobblestone signed objectively suggests Roberts had either the intention or authority to claw back the costs and fees he paid to Cobblestone. *See Yunker v. Allianceone Receivables Mgmt., Inc.*, 701 F.3d 369, 372-74 (11th Cir. 2012) (holding that offer and acceptance of judgment mooted an appeal even though appellant expressly reserved right in consent agreement to continue appeal, when neither agreement nor parties' actions indicated that appellant sought return of the judgment it already paid). Nor, prior to a wholly unsupported assertion at oral argument, has Roberts ever argued as much. *See Estate of Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1358 (11th Cir. 2010) ("We cannot reach out and consider claims raised for the first time at oral argument, [especially] without any factual foundation . . . ."). It would be inequitable to permit a party to enjoy partial relief from a judgment against him by signing and complying with an agreement he admits mooted at least some of the judgment against him while simultaneously claiming the right to recover what he paid in consideration, at least when the agreement itself (and the parties' actions) contemplates nothing of the sort.[9]

---

[9] In any event, the only challenge to the compensatory costs-and-fees award Roberts properly preserved — that he was financially unable to pay them — is squarely foreclosed by circuit precedent, as we have recently explained. *F.T.C. v. Leshin*, No. 12-12811, — F.3d — , 2013 WL 2420363, slip op. at 13 (11th Cir. 2013) ("For a compensatory contempt sanction, in contrast to a coercive one, inability to pay is no defense.").

13

Roberts argues that "[t]he Consent Order was not a post-judgment settlement, but an order prepared by the court modifying the conditions to purge the contempt." But Roberts fails to explain this. A document all parties sign and fully comply with in which a judgment debtor agrees to pay a portion of the judgment entered against him in exchange for release from the remainder is functionally a settlement. To decide if payment of a judgment pursuant to an agreement between the parties renders an appeal moot, "we look to the most important factor, which is the parties' objective manifestations of intent." *Alvarez Perez*, 518 F.3d at 1307. Roberts does not seriously dispute that the document, which notably was entitled a "*consent* order," is, on its face, a compromise he negotiated with Cobblestone, albeit with the district court's aid. And he cannot contest that the order he signed is, on its face, unequivocal. It provides what he agreed to pay, what Cobblestone agreed to accept, and what he got in return, namely release from the rest of the sanctions he incurred. Finally, a party's consent to entry by the court of an agreement that resolves a case is a powerful objective indicator that he intends to be bound by it. *See Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1167-68 (11th Cir. 2012) (observing that agreement to the entry of a judgment, by contrast to a mere contractual promise to pay, strongly indicates that a case is moot), *cert. denied sub nom. Convergent Outsourcing, Inc. v. Zinni*, No. 12-744, 2013 WL 1942424 (U.S. May 13, 2013). Thus, Roberts's

14

consent to have his agreement with Cobblestone settling all issues between them entered by the district court as a consent order, even though the court lacked jurisdiction to enter it during the appeal, reinforces our conclusion that, viewed objectively, the order terminates this litigation.

Roberts contends that "[i]t is axiomatic that a partial or full payment of a judgment does not settle the case or moot an appeal." Even assuming that broad statement is accurate, it is of no help to Roberts. He did not merely pay part of a judgment, but signed onto a *quid pro quo* agreement disposing of all the judgments against him. That agreement distinguishes this case from those Roberts cites. Although some circuits have held, as Roberts recites, that "'payment of a judgment does not foreclose an appeal,'" those courts have made an express exception to that "'usual rule'" when "'there is some contemporaneous agreement not to appeal, implicit in a compromise of the claim after judgment . . . .'" *Milicevic v. Fletcher Jones Imps., Ltd.*, 402 F.3d 912, 915 (9th Cir. 2005) (quoting *Woodson v. Chamberlain*, 317 F.2d 245, 246 (4th Cir. 1963)). And in this circuit, "[a]s a general principle, settlement between the parties in litigation renders the case moot." *Yunker*, 701 F.3d at 372. Roberts and Cobblestone reached a compromise settling the issues between them, the district court accepted it and entered it as a judgment, and Roberts filed it in this appeal, as he had agreed to do. Roberts affords us no basis upon which to disregard the objective import of the consent

15

order and the actions he took pursuant to it — namely, that he abandoned his pursuit of this case.

IV.

Roberts signed and satisfied an agreement to pay some of the sanctions he incurred in exchange for relief from the rest, without ever a whisper that he could undo the settlement if he prevailed on appeal.  Viewed objectively, the consent order Roberts signed and his actions in compliance with it dispose of all issues in this appeal.  Accordingly, we **DISMISS** this appeal as **MOOT**.