[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 13-11738 & 13-14912
_____

D.C. Docket No. 1:10-cv-03673-ODE

AIRTRAN AIRWAYS, INC.,

Plaintiff-Appellee,

versus

BRENDA ELEM,
MARK D. LINK, and
LINK & SMITH, P.C.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(September 23, 2014)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and HONEYWELL,[*]
District Judge.

PRYOR, Circuit Judge:

This appeal requires us to decide whether an employee welfare benefit plan

_____

[*] Honorable Charlene Edwards Honeywell, United States District Judge for the Middle District
of Florida, sitting by designation.

may recover medical costs it spent on behalf of a beneficiary after she and her attorney conspired to hide and disburse settlement funds she received after a car accident. Brenda Elem participated, as an employee of AirTran, in a self-funded employee welfare benefit plan. After Elem suffered injuries in a car accident and the plan paid over $100,000 for her medical care, Elem sued the other driver and settled for $500,000. AirTran sought reimbursement from Elem, but Elem's attorney, Mark Link, misrepresented that Elem had settled for only $25,000. Link's sin then found him out, *see* Numbers 32:23, when he accidentally sent the plan a copy of a settlement check for $475,000. After AirTran sued Elem, Link, and Link & Smith, P.C., for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(3), the district court granted summary judgment and awarded attorney's fees and costs in favor of AirTran.

Elem, Link, and the law firm challenge three orders. They contest the summary judgment on the ground that AirTran failed to satisfy the strict tracing rules of equitable restitution, but these rules do not apply to the equitable lien by agreement that the AirTran plan created. *See Sereboff v. Mid Atlantic Med. Serv., Inc.*, 547 U.S. 356, 364–65, 126 S. Ct. 1869, 1875 (2006). Elem and Link argue that the district court abused its discretion when it awarded AirTran attorney's fees and costs, but the district court had the authority to sanction them for their bad

2

faith. Elem and Link also complain that the district court misapplied Federal Rule of Civil Procedure 70 when the court ordered enforcement of the judgment, but that issue became moot when Link and his law firm complied with the order. We affirm the summary judgment and award of fees and costs and dismiss as moot the appeal of the order to enforce the judgment.

## I. BACKGROUND

In 2007, Brenda Elem sustained injuries in a car accident.  Her employer, AirTran, paid $131,704.28 for her medical care as a result of her participation in its self-funded employee welfare benefit plan. The plan designated Elem as a constructive trustee over any payments recovered from third parties and created an equitable lien for the amount of benefits paid by the plan. Under the plan, when Elem accepted her medical benefits from AirTran, she acknowledged that AirTran had a first priority claim to all payments made by a third party, even if that third party failed to pay the full amount of her damages. Months after the accident, the plan administrator advised Elem that, if she sued the driver of the other vehicle, Migel Rizo, the terms of the plan required Elem to reimburse AirTran with proceeds from that suit. And the plan administrator also advised Rizo's insurer, AIG, of that right to reimbursement.

3

In September 2007, when Elem contacted AIG to settle the claim against Rizo within his liability policy limits of $25,000, she misrepresented that the plan would have no lien against any funds she would recover from AIG.  She also stated that she intended to sue Rizo for the full amount of her damages if AIG refused to pay the $25,000. AIG responded that Rizo's policy limit was $25,000 and that it would be willing to issue a settlement check for that amount to Elem if her plan "waive[d] their subrogation lien" or to Elem and the plan if the plan did not waive the lien.

Elem hired Mark Link of Link & Smith, P.C., as her attorney and sued Rizo for the injuries she sustained in the accident. AIG advised Link that it had offered $25,000 to Elem, but that AIG had notice of a lien and a duty to protect its insured. In December 2007, the plan administrator for AirTran notified Link of the lien in favor of AirTran.

Rizo and Elem later settled their lawsuit for $500,000. During the negotiation of their settlement agreement, Link asked AIG to prepare two releases: one reflecting payment of the policy limit of $25,000 and another for $475,000 in settlement of Rizo's claim of bad faith. Link also requested two separate checks and demanded that the $25,000 release not mention Rizo's release of his claim of

4

bad faith. AIG responded that "it seems deceptive" to omit Rizo's release of his claim, but Link got his way.

Elem executed a release in favor of AIG for $25,000 and another release for $475,000 signed also by Rizo. AIG issued two separate settlement checks to Elem, Link, and Link & Smith, one for $25,000 and another for $475,000. Elem later received $274,184.08; Link & Smith retained $190,000.00 for attorney's fees and $10,815.92 for expenses; and Link & Smith kept the remaining funds of $4,500.00 in an escrow account.

When Link informed the plan administrator about the settlement, he stated that Elem had settled her claim against Rizo for the policy limit of $25,000 and "has abandoned any hope of recovering" more than that amount. Although Link intended to enclose a copy of the $25,000 check as proof of that settlement, he inadvertently enclosed a copy of the $475,000 check. The plan administrator noticed the error and demanded reimbursement from "[a]ll [s]ettlements and [j]udgments."

When Elem refused to reimburse the plan, AirTran filed suit against Elem, Link, and Link & Smith. The parties filed cross motions for summary judgment, and the district court granted summary judgment in favor of AirTran. The court

5

then awarded AirTran attorney's fees in the amount of $145,723.28 and costs in the amount of $3,692.52.

When Link still refused to pay, AirTran filed a motion to enforce the judgment under Federal Rule of Civil Procedure 70. Elem and Link responded that Rule 70 was inapplicable because the judgment against them was for money damages enforceable only through a writ of execution. The district court granted the motion and ordered Elem and Link to satisfy the full amount of the judgment or post a bond. AirTran later moved to hold Elem and Link in contempt when they refused to comply with the order, but AirTran withdrew the motion when Link and Link & Smith eventually paid the full amount of the judgment and attorney's fees and costs. At oral argument, the parties stipulated that Link and his firm conditioned this payment on the disposition of the appeal of the summary judgment and the award of attorney's fees and costs.

## II. STANDARDS OF REVIEW

Two standards of review govern us. First, we review *de novo* a summary judgment and draw all inferences and review all evidence in the light most favorable to the nonmoving party. *Hamilton v. Southland Christian Sch., Inc.,* 680 F.3d 1316, 1318 (11th Cir. 2012). Summary judgment should be granted only when the movant establishes that there is no genuine issue of material fact and that

6

the movant is entitled to judgment as a matter of law. *Id.* We also review the mootness of an appeal *de novo*. *Tanner Adver. Grp., L.L.C. v. Fayette Cnty., Ga.*, 451 F.3d 777, 784 (11th Cir. 2006). Second, we review for abuse of discretion an award of attorney's fees and costs. *Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1263 (11th Cir. 2008).

### III. DISCUSSION

Elem and Link contest the summary judgment in favor of AirTran, the award of fees and costs, and the issuance of the Rule 70 order to enforce the judgment, but their arguments fail. We discuss each order of the district court in turn.

*A. The District Court Correctly Granted Summary Judgment in Favor of AirTran.*

We divide this section in two parts. We first discuss Elem and Link's challenge to the summary judgment in favor of AirTran on the ground that AirTran failed to seek equitable relief. We second discuss Elem and Link's attempts to avoid liability based on four technicalities, none of which justify the breach of their fiduciary duty.

1. AirTran seeks appropriate equitable redress.

The Act permits AirTran to file a civil action "to obtain . . . appropriate equitable relief . . . to redress" the misdeeds of Elem, Link, and Link & Smith. 29 U.S.C. § 1132(a)(3) (B). "[A]ppropriate equitable relief" includes only "those

7

categories of relief that were *typically* available in equity," *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 122 S. Ct. 708, 712 (2002). Elem and Link argue that AirTran cannot recover Elem's medical costs because AirTran seeks money damages, a legal remedy, but AirTran contends that the plan created an equitable lien by agreement over the settlement funds. AirTran argues that it seeks to recover "specifically identifiable funds" in "the possession and control" of Elem and Link, that the plan created an equitable lien by agreement, and that its claim, therefore, falls within "appropriate equitable relief" allowed under the Act. *Sereboff*, 547 U.S. at 362–63, 126 S. Ct. at 1874 (internal quotation marks omitted).

This case sounds in equity. When AirTran filed suit against Elem and Link, it did so to enforce the equitable lien by agreement created by the plan. In "the days of the divided bench," this suit would have been equitable in nature. *See id.* at 363–65, 126 S. Ct. at 1874–76. Like the plan in *Sereboff*, the unambiguous terms of the AirTran plan created an equitable lien against any settlement funds that Elem received as a result of her accident. As soon as AIG gave Elem the settlement funds, AirTran "could follow it into the hands of [Elem and Link]." *Barnes v. Alexander*, 232 U.S. 117, 123, 34 S. Ct. 276, 278 (1914).

8

We must also ensure that the nature of the remedy AirTran seeks is equitable. *Compare Sereboff*, 547 U.S. at 361–63, 126 S. Ct. at 1873–74, *with Knudson*, 534 U.S. at 212–14, 122 S. Ct. at 714–15. Elem and Link are correct that the remedy of money damages is quintessentially a remedy at law. For that reason, a plan may not file suit against a beneficiary for reimbursement and seek recovery from "assets generally" of that beneficiary, because that suit would seek legal, not equitable, restitution. *Sereboff*, 547 U.S. at 363, 126 S. Ct. at 1874 (distinguishing *Knudson*). But when a plan seeks "specifically identifiable funds" in "the possession and control" of a beneficiary, such restitution of the funds is equitable in nature. *Id.* at 362–63, 126 S. Ct. at 1874 (internal quotation marks omitted).

AirTran seeks an equitable remedy. AirTran filed suit to enforce its equitable lien over "specifically identifiable funds" that Elem had in her "possession." *See Sereboff*, 547 U.S. at 362–63, 126 S. Ct. at 1874 (internal quotation marks omitted). According to the plain terms of the plan, the settlement that AIG paid to Elem constitutes the specifically identifiable funds over which AirTran had a lien. Elem and Link attempt to liken those settlement funds to the funds in *Knudson*, but, unlike the beneficiary in *Knudson*, Elem possessed the funds. *Id.* (distinguishing *Knudson* on the ground that the beneficiary never possessed the settlement fund); *see also Thurber v. Aetna Life Ins. Co.*, 712 F.3d

9

654, 664 (2d Cir. 2013) ("[A]ll that matters is that the beneficiary did, at some point, have possession and control of the specific portion of the particular fund sought by the insurer."). Once she possessed those funds, the equitable lien by agreement attached to them, making them "specifically identifiable." *Sereboff*, 547 U.S. at 362–63, 126 S. Ct. at 1874.

We disagree with our dissenting colleague, who adopts the position of the Ninth Circuit and concludes that AirTran cannot collect what it is owed because it has not traced the settlement funds after Elem divided them with her attorney. (Dissenting Op. at 30–33). *See Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1095 (9th Cir. 2012) ("Nothing in *Sereboff* suggests that a fiduciary can enforce an equitable lien against a beneficiary's *general assets* when specifically identified funds are no longer in a beneficiary's possession."). It matters not whether the settlement funds have since been disbursed or commingled with other funds. In *Sereboff*, the Supreme Court made clear that AirTran need not trace the settlement fund back to AirTran to enforce its equitable lien by agreement. *Id.* at 364–65, 126 S. Ct. at 1875–76. As soon as the settlement fund was identified, the plan imposed an equitable lien over that fund even though it was in the hands of the beneficiaries. *Id.* at 363–64, 126 S. Ct. at 1875. And in the wake of *Sereboff*, our sister circuits have concluded that "[p]roperty to which the

10

lien attached may be converted into other property without affecting the efficacy of the lien." *Funk v. CIGNA Grp. Ins.*, 648 F.3d 182, 194 (3d Cir. 2011); *see Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Lewis*, 745 F.3d 283, 285 (7th Cir. 2014) ("The defendants argued . . . that because the settlement funds have been dissipated, this really is a suit for damages . . . . But the defendants are wrong."); *Thurber*, 712 F.3d at 663–64 ("[T]he beneficiary's literal segregation of funds is irrelevant when the terms of the . . . plan put the beneficiary on notice that she would be required to reimburse the insurer for an amount equal to what she might get from third-party sources." (alterations and internal quotation marks omitted)); *Cusson v. Liberty Life Assurance Co. of Boston*, 592 F.3d 215, 231 (1st Cir. 2010); *Longaberger Co. v. Kolt*, 586 F.3d 459, 466–67 (6th Cir. 2009); *see also Popowski v. Parrott*, 461 F.3d 1367, 1374 n.8 (11th Cir. 2006) ("[T]he fact that the third-party recovery triggering the [p]lan's reimbursement provision was comingled, even absent tracing, would not have disqualified an equitable lien had that equitable lien been *by agreement* . . . ."). We join those circuit courts and conclude that, even though Elem willfully refused to abide by the terms of the AirTran plan, her dereliction as a constructive trustee could not destroy the lien that attached *before* Elem divided the funds with her attorney. *See Barnes*, 232 U.S. at 122, 34 S. Ct. at 278 (explaining that the lien often attaches before the

11

specific funds exist). Elem and Link argue that AirTran may take only the remaining $4,500 of settlement funds left in the escrow account, but they misunderstand that the plan imposed a lien for the entire $131,704.28 of medical benefits paid, which attached when Elem obtained the settlement funds. Contrary to Elem and Link's argument, these "specifically identifiable funds" did not disappear when they divided the money.

By the terms of the plan, AirTran paid for Elem's medical care and, as a result, could enforce it the moment Elem possessed the settlement checks from AIG. Even though Elem and Link distributed the funds, the *res* remained the same: the amount of the medical benefits paid to Elem. *See Barnes*, 232 U.S. at 122, 34 S. Ct. at 278. Elem and Link cannot defeat the first priority lien of AirTran, and Elem cannot abandon her duties as trustee under the constructive trust by commingling the *res* with other funds. *See Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 621 (7th Cir. 2008) ("[The insurer] may bring its counterclaim [for reimbursement] even if the benefits it paid Gutta are not specifically traceable to Gutta's current assets because of commingling or dissipation."). Their dishonesty and manipulation of the settlement funds cannot destroy the lien of AirTran over the "specifically identifiable" monies.

12

2. Elem and Link's remaining arguments about the summary judgment are meritless.

Elem and Link raise four additional arguments, none of which we find persuasive. First, Link and Link & Smith argue that AirTran cannot recover from them as third-party attorneys. Second, Elem and Link argue that, when AIG funded the $475,000 portion of the settlement, AIG no longer qualified as a "responsible party" under the plan. Third, they argue that AirTran cannot force Elem to reimburse it because AirTran never disclosed to her the plan terms. Fourth, Elem seeks to avoid liability by arguing that, because the plan administrator provided healthcare services, AirTran cannot sue to enforce its right to reimbursement. We address each of these arguments in turn.

Link and Link & Smith argue that they are not proper defendants because AirTran cannot seek reimbursement from a third-party attorney, but that argument fails. A plan may recover from a nonfiduciary party in interest, even if that party has not violated a duty expressly imposed by the Act. *Harris Trust & Sav. Bank v. Saloman Smith Barney, Inc.*, 530 U.S. 238, 245, 120 S. Ct. 2180, 2186–87 (2000). Because Elem breached her fiduciary duty as trustee and transferred the trust property to Link and Link & Smith, the attorneys took the property subject to the trust, unless they purchased the property for value and without notice of the fiduciary's breach of duty. *Id.* at 250, 120 S. Ct. at 2189. Even if Link and Link &

13

Smith were not the original wrongdoers, they are not insulated from liability for restitution. *Id.* at 251, 120 S. Ct. at 2189; *see also Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 357–58 (5th Cir. 2003), *abrogated on other grounds*, *ACS Recovery Serv., Inc. v. Griffin*, 723 F.3d 518 (5th Cir. 2013) (en banc). And Link and Link & Smith are hardly innocent parties. Link and his firm tried to hide the full amount of the settlement agreement from AirTran. Link represented that the $25,000 would take care of any liens on the settlement asserted by AirTran, but paid himself and his firm $200,815.92. Even if they had not known of the first priority lien of AirTran, they could not defeat the lien, but the record makes clear that the plan administrator had repeatedly notified Link and Link & Smith that AirTran had an equitable lien and intended to enforce it.

Link and his firm knew that they took fees and costs subject to the lien held by AirTran, and they cannot now avoid liability by asserting that they did not agree to the terms of the plan. The lien arose before they entered into a contingency fee arrangement with Elem, and Elem agreed to the terms of the plan long ago. She agreed that "[t]he Plan is not required to participate in or pay court costs or attorney fees to any attorney hired by [Elem] to pursue [Elem]'s damage claim." These obligations, which "precluded [Elem] from contracting away to the law firm

14

that which [she] did not own [herself], namely, the right to all or any portion of the [sum] that rightfully belonged to the Plan," predated her attorney-client relationship with Link and his firm. *Bombardier*, 354 F.3d at 357. That Link and his firm disregarded the first priority lien of AirTran and commingled the settlement funds does not defeat the claim for equitable relief by AirTran because, "under *Sereboff,* [AirTran] was free to follow a portion of the settlement funds into [Link and Link & Smith's] hands." *Longaberger Co.*, 586 F.3d at 469.

Elem and Link argue too that Elem could not have wrongfully transferred the settlement funds because Elem never had "possession" of those funds. They explain that AIG transferred the funds to Link and his firm. They argue that, because Elem never possessed the funds, her duty to reimburse AirTran was never triggered.

Nonsense. Even if AIG wrote and delivered the checks to Link and his firm, Elem "had at least constructive possession and control of the fund[s] to facilitate the settlement." *Griffin*, 723 F.3d at 529 ("Griffin's attempt to divorce himself from the origin of the fund and its disposition is no more persuasive than if he had directed the money to a close relative. . . . [H]e could not give away that which he did not possess."). And here, Elem likely had "actual possession" because her attorney, as her agent, received and deposited the checks.

15

Elem and Link also argue that AirTran cannot seek reimbursement because AIG is not a "responsible party" under the terms of the plan. They argue that, when AIG paid the $475,000 check, AIG no longer qualified as a "responsible party" for the purposes of reimbursement because AIG was no longer providing "liability coverage" for Rizo, but this argument contravenes the plain terms of the plan.

The terms of the plan entitle AirTran to reimbursement from "any payment" from "any Responsible Party as a result of an injury, illness, or condition." The plan defines "Responsible Party" as "any party actually, possibly, or potentially responsible for making any payment to a Covered Person due to a Covered Person's injury, illness or condition[, which] includes the liability insurer of such party or any insurance coverage." Because AIG settled the lawsuit for $500,000, it meets the definition of a "responsible party." It matters not at all that Rizo's policy limits were only $25,000 because the terms of the plan allow AirTran to recover "any payment" to Elem "due to" her injury. AirTran now may seek its "specifically identifiable" amount from the $500,000 for medical expenses paid on behalf of Elem.

Elem and Link also attempt to evade liability by arguing that AirTran cannot force Elem to reimburse AirTran because she never saw the plan documents, but Elem accepted the benefits and is bound by the terms of the plan unless AirTran

16

prejudiced Elem by its failure to disclose them. Our Court has said that "the quantity of an employer's procedural violations," such as failure to abide by disclosure requirements, "may work a substantive harm." *Harris v. Pullman Standard, Inc.*, 809 F.2d 1495, 1499 (11th Cir. 1987). But an employee must establish that she was prejudiced by an infraction committed by the plan. *See Hein v. TechAmerica Grp., Inc.*, 17 F.3d 1278, 1280–81 (10th Cir. 1994); *see Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991) (requiring bad faith, active concealment, or inducement to rely on a faulty plan summary by an administrator before a court will award recovery for procedural violations).

Elem has not alleged that AirTran committed a multitude of procedural violations or that she was prejudiced by any nondisclosure. Nor can she. The plan administrator repeatedly sent letters expressing its intent to pursue reimbursement. And Elem allowed AirTran to pay over $130,000 of her medical bills. Elem knew of the lien before disbursing the funds to herself and to her attorney, and she cannot avoid liability on a technicality. *See Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 171–72 (2d Cir. 2005) ("Where a plan administrator fails to fulfill its statutory duty . . . , but where the evidence shows that the claimant had actual knowledge of the requirement at issue, the error is necessarily harmless.").

17

Finally, Elem and Link argue that AirTran lacks standing to seek reimbursement of Elem's medical costs that the plan administrator paid, but they misunderstand the nature of the self-funded employee benefit plan offered by AirTran. Under the terms of the plan, AirTran provided various benefit options to its employees and contracted with the plan administrator to provide various services, including network access, subrogation, and patient management services. In the district court, Elem relied on language in the Benefits Enrollment Guide, which refers to healthcare services provided by the plan administrator, but the provision of those administrative services does not give the plan administrator the right to seek reimbursement from Elem. Instead, AirTran still paid for all expenses incurred by its participants, including Elem. We reject Elem and Link's argument that AirTran cannot now recover its costs because it contracted with the plan administrator.

*B. The District Court Did Not Abuse Its Discretion by Awarding Attorney's Fees and Costs to AirTran.*

A district court, "in its discretion," may award attorney's fees to a party, 29 U.S.C. § 1132(g)(1), if that party achieved "some degree of success on the merits," *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255, 130 S. Ct. 2149, 2158 (2010). We require district courts to consider five factors when deciding whether to award fees to a prevailing party:

18

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; [and] (5) the relative merits of the parties' positions.

*Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993). We have explained that "[n]o one of these factors is necessarily decisive, . . . but together they are the nuclei of concerns that a court should address." *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

Elem and Link argue that the district court unjustly awarded AirTran attorney's fees, but the five *Freeman* factors support the award. First, we rarely see such a textbook example of "bad faith." Link intentionally attempted to deceive the plan administrator when he sent the letter stating that $25,000 represented the entire settlement amount. And he coerced AIG to draft two separate releases to effectuate his deception. Fortunately for AirTran, his scheme came crashing down when he sent a copy of the $475,000 check to the plan administrator. His actions no doubt evince bad faith. Second, Link and Link & Smith have already satisfied the award, although conditionally. Third, an award of attorney's fees in this circumstance would help deter others from cheating their employee benefit plan. Fourth, the award protects plan assets, which benefit all plan participants. And

19

fifth, the defense mounted by AirTran was highly meritorious. The district court

did not abuse its discretion when it awarded attorney's fees to AirTran.

### C. The Payment of the Award of Fees and Costs Moots Any Argument About the Entry of the Rule 70 Order by the District Court.

Elem and Link argue that the district court misinterpreted Federal Rule of

Civil Procedure 70 when it ordered them to pay the full amount of the judgment

and fees and costs. Rule 70 provides, "If a judgment requires a party to convey

land, to deliver a deed or other document, or to perform any other specific act and

the party fails to comply within the time specified, the court may order the act to be

done—at the disobedient party's expense—by another person appointed by the

court." Rule 70 "gives the district court a discrete and limited power to deal with

parties who thwart final judgments by refusing to comply with orders to perform

specific acts." *Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*, 425 F.3d 443, 449

(7th Cir. 2005). Elem and Link contend that the district court erroneously

converted a final money judgment at law into an injunction and that the judgment

was enforceable only through a writ of execution.

This issue is no longer justiciable because the appeal of the order is now

moot. Instead of posting a supersedeas bond, Link and his firm paid the full

amount due to AirTran to avoid being held in contempt. Even if we agreed that the

district court erred when it issued that order, we could not grant any meaningful

20

relief because the defendants have already complied with it. *See Bradford Marine, Inc. v. M/V Sea Falcon*, 64 F.3d 585, 587 n.1 (11th Cir. 1995); *Fidelcor Mortg. Corp. v. Ins. Co. of N. Am.*, 820 F.2d 367, 370 (11th Cir. 1987) ("When it executed the satisfaction of the judgment, it included no reservation allowing it to proceed with an appeal on some issues; it satisfied the judgment in toto. Therefore, there is nothing left from which it may appeal."). No case or controversy about the merits of the Rule 70 order remains after the payment. *See RES-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC*, 718 F.3d 1308, 1314 (11th Cir. 2013) ("Where no legally cognizable interest is at stake between the parties, a case becomes moot. . . . This is so no matter how vehemently the parties continue to dispute the issues that animated the litigation." (internal quotation marks and citation omitted)).

We are befuddled by our dissenting colleague's contrary conclusion. (Dissenting Op. at 36–39). At oral argument, when we asked counsel for Elem, Link, and Link & Smith what injury they now suffered as a result of the Rule 70 order even though they had paid the judgment, he answered, "Any injury now, perhaps not." We reiterate that because Link and Link & Smith have complied with the Rule 70 order by paying the judgment, we cannot afford them any meaningful relief even if that order was in error.

21

## IV. CONCLUSION

We **AFFIRM** the summary judgment and award of attorney's fees and costs in favor of AirTran and **DISMISS** as moot the appeal of the order under Rule 70.

MARTIN, Circuit Judge, dissenting:

AirTran Airways, Inc. (AirTran) says that its suit seeks equitable relief, but it fails to make a critical showing for purposes of equity: that the defendants remain in possession of the disputed property. For the reasons that follow, I have come to understand that AirTran's suit seeks a legal remedy which is not permitted under the statute it relies on. Based on this understanding, I would reverse the District Court's grant of summary judgment in favor of AirTran, its order awarding attorney's fees and costs, and its later Rule 70 order enforcing the judgment.

## I.    THE DISTRICT COURT IMPROPERLY GRANTED SUMMARY JUDGMENT BY CLASSIFYING AIRTRAN'S CLAIMS AS EQUITABLE.

At issue is whether AirTran's suit against Brenda Elem, her attorney Mark Link, and his law firm Link & Smith, P.C. (Link & Smith) (collectively the defendants) to recover settlement funds subject to an equitable lien by agreement is permitted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(3)(B). This statute gives courts the power to grant "other appropriate equitable relief" only when enforcing a covered insurance plan. Specifically, a plan fiduciary may bring a civil action under ERISA "to obtain other appropriate equitable relief . . . to enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii). The Supreme Court has construed this section to

23

authorize only "those categories of relief that were <u>typically</u> available in equity."

<u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 256, 113 S. Ct. 2063, 2069 (1993).

Thus, the statute offers no relief for legal claims.  Whether a remedy is "legal or

equitable depends on the basis for [the plaintiff's] claim and the nature of the

underlying remedies sought."  <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>,

534 U.S. 204, 213, 122 S. Ct. 708, 714 (2002) (alteration in original) (internal

quotation marks omitted).

I certainly recognize that AirTran's claim here is one arising in equity.  The

clear terms of the insurance plan created an equitable lien by agreement over the

money Ms. Elem got as a result of her third party suit from the moment she had

actual or constructive possession of that money.  However, on the facts before us,

the only remedy available to AirTran is legal, not equitable, in nature.  Money

damages are traditionally a remedy at law, but can be equitable if the plaintiff

seeks: (1) "specifically identifiable funds" in (2) the defendant's "possession and

control."  <u>Sereboff v. Mid Atl. Med. Servs., Inc.</u>, 547 U.S. 356, 362–63, 126 S. Ct.

1869, 1874 (2006) (internal quotation marks omitted).  AirTran properly identified

specific funds, but failed to establish that the identifiable funds are "in the

possession and control" of the defendants.  The remedy AirTran seeks is therefore

a legal one and is not permitted under 29 U.S.C. § 1132(a)(3)(B).

24

## A. A MONEY DAMAGE AWARD IS ONLY EQUITABLE IF THE DEFENDANT REMAINS IN POSSESSION.

Supreme Court precedent makes clear that a plaintiff proceeding in equity to recover funds from a defendant must, at a minimum, show that those funds are presently in the defendant's possession. In Walker v. Brown, 165 U.S. 654, 17 S. Ct. 453 (1897), the Supreme Court was asked to decide whether an equitable lien by agreement remained attached to certain Memphis city bonds in the hands of the widow of a businessman who pledged the bonds to plaintiff J. H. Walker & Co. (Walker). That businessman, Mr. Brown, had actually pledged the bonds to Walker for the benefit of a third party. As that third party got into financial difficulties, Mr. Brown paid its creditors the value of the bonds, retook possession of the bonds, and then gifted them to his wife before he passed away. The Supreme Court held that the lien by agreement was not extinguished when Mr. Brown bought them back, and that the "equitable lien will be enforced by a court of equity against the bonds in the hands of [Mrs.] Brown or against third persons who are volunteers or have notice." 165 U.S. at 664, 17 S. Ct. at 457 (emphasis added). The Supreme Court's discussion of available equitable relief turned on the current location and possession of the bonds. See also Ketchum v. St. Louis, 101 U.S. 306, 318 (1879) ("With that [equitable] lien the property itself was chargeable by whomsoever it or the funds accruing therefrom are or may be held.").

25

More recent cases also support the expectation that a defendant must still be in possession of the property subject to the lien to allow equitable recovery under 29 U.S.C. § 1132(a)(3)(B).  The Supreme Court denied reimbursement in Knudson because the insurance company was not seeking to recover "particular funds or property in the defendant's possession."  534 U.S. at 213, 122 S. Ct. at 714.  The company sued Ms. Knudson, the beneficiary, instead of the trustee in charge of the Special Needs Trust where the money was held pursuant to California law.  Because Ms. Knudson did not have the funds in her possession, the Court observed that the plaintiff's claim was "not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to some funds for benefits that they conferred."  Id. at 214, 122 S. Ct. at 715.  The Court held "where 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].'"  Id. at 213, 122 S. Ct. at 714 (alteration in original) (quoting Restatement of Restitution § 215, cmt. a, at 867); see also Restatement of Restitution § 215 cmt. b ("A person whose property is wrongfully taken by another is not entitled to priority over other creditors unless he proves that the wrongdoer not only once had the property or its proceeds, but

26

still has the property or its proceeds or property in which the claimant's property or its proceeds have been mingled indistinguishably.").

In Sereboff , the Supreme Court noted that the "impediment to characterizing the relief in Knudson as equitable" was not present.  Id. at 362, 126 S. Ct. at 1874.  That is because, in contrast to Knudson, the plan administrator in Sereboff sought "particular funds or property in the defendant's possession," Knudson, 534 U.S. at 214, 122 S. Ct. at 708, where the identified fund was "preserved [in the Sereboffs'] investment accounts."  Sereboff, 547 U.S. at 362–63, 126 S. Ct. at 1874 (alteration in original) (quoting Mid Atl. Med. Servs., LLC v. Sereboff, 407 F.3d 212, 214 (4th Cir. 2005), aff'd sub nom. Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 126 S. Ct. 1869 (2006)).

This Court and other Circuit Courts have followed the Supreme Court's guidance that a defendant's current possession of the funds at issue is a necessary element of an equitable claim.  See, e.g., Popowski v. Parrott, 461 F.3d 1367, 1373 (11th Cir. 2006) ("Unlike in Knudson, a significant portion of the funds specified went directly into the [insureds'] bank account and, thereby, was in their possession for purposes of this case.  Thus, at the time they filed their suit, [the plan fiduciaries] sought 'not to impose personal liability on [the beneficiary], but to restore to the plaintiff[s] particular funds or property in [the beneficiary's]

27

possession.'" (fourth alteration in original) (emphasis added) (quoting Knudson, 534 U.S. at 214, 122 S. Ct. at 714–15)); Treasurer, Trs. Of Drury Indus. Health Care Plan & Tr. v. Goding, 692 F.3d 888, 896 (8th Cir. 2012) ("In equity, there was no cause for restitution where the trustee of property wrongfully disposed of another's property, but no longer held that property or its product. A party who has been wrongfully divested of its property . . . could only recover it if it proved not only that the other party once had property legally or equitably belonging to it, but also that he still holds the property or properties which is in whole or part its product." (citation omitted) (internal quotation marks and alterations omitted)); Bilyeu v. Morgan Stanley Long Term Disability Plan, 683 F.3d 1083, 1095 (9th Cir. 2012) (rejecting the argument that an equitable lien can be enforced against general assets when the specifically identified property has been dissipated); Loffredo v. Daimler AG, 500 F. App'x. 491, 499 (6th Cir. 2012) ("To plead claims for equitable relief . . . the plaintiffs would have to allege either that the defendants currently (and improperly) possess the assets dispersed from the trust or that they retain profits generated from that property."). In disagreeing with a case cited favorably by the majority, the Solicitor General of the United States also concluded that a plaintiff must establish the defendant's possession of the disputed funds to recover under this provision. See Brief for the United States as Amicus Curiae at

28

9, Thurber v. Aetna Life Ins. Co., et al., ___ U.S. ___, 134 S. Ct. 2723 (2014) (No. 13-130), 2014 WL 1783200 at *9 ("In the government's view, the court of appeals in this case erred in concluding that a plan fiduciary can enforce an equitable lien regardless of whether the funds at issue have been dissipated.").

### B.  AIRTRAN DID NOT ESTABLISH THAT DEFENDANTS HAVE POSSESSION OF THE SETTLEMENT FUNDS.

As soon as the settlement funds were transferred to the benefit of Ms. Elem, AirTran "could follow [those funds] into the hands" of the defendants.  Panel Op. at 8 (quoting Barnes v. Alexander, 232 U.S. 117, 123, 34 S. Ct. 276, 278 (1914)).  Once AirTran established who had the funds, its recovery against the person holding the funds would rightfully be classified as "equitable" according to Supreme Court and common law precedent.  Yet what AirTran is entitled to do in equity, and what it actually did here, are very different things.

AirTran's complaint alleges "[u]pon information and belief, portion(s) of the funds to which the Plan is entitled are in the possession of Defendant Elem, Defendant Link and/or the Defendant Firm."  AirTran's statement of material facts submitted in connection with its motion for summary judgment fails to offer any support for the allegation about possession made in its complaint.  Though AirTran had ample opportunity in discovery to inquire about the exact location of the distributed settlement money, it did not.  Neither did AirTran ask the District Court

29

for a restraining order or injunction to make sure that the funds were easy to identify once the case was resolved, as had happened in other reimbursement cases. See, e.g., Sereboff, 547 U.S. at 360, 126 S. Ct. at 1873 (noting that the Sereboffs agreed to preserve the disputed funds in an investment account until the suit was resolved); Popowski, 461 F.3d at 1370 ("[T]hey filed this suit along with a motion for a temporary restraining order and preliminary injunction to protect the settlement proceeds."). In its argument here, AirTran says that the "settlement funds could be followed into the hands of Elem, Link, and Link & Smith, P.C.," but it does not point to the money's current location. AirTran suggests that defendants engaged in "chicanery" by "concealing and then quickly 'spend[ing] all money received,'" but points to nothing in the record to support that proposition.

## C. SEREBOFF'S LIMITATION ON "STRICT TRACING" DOES NOT IMPACT THIS CASE.

The majority forgives AirTran's failure to show defendants' possession of the settlement funds by stating that disbursal or commingling of the settlement funds is irrelevant to whether the claim is properly characterized as equitable. Ms. Elem, Mr. Link, and Link & Smith challenged the District Court's grant of summary judgment in part because AirTran did not establish that the funds it requested were still in the possession of any defendant. The majority says, mistakenly I believe, that the defendants' challenge is one "on the ground that

30

AirTran failed to satisfy the strict tracing rules of equitable restitution." Panel Op. at 2. The majority then relies on Sereboff to reject this appeal. 547 U.S. at 364, 126 S. Ct. at 1875 (discussing the "strict tracing rules" that applied to equitable restitution at common law). But I do not read Sereboff in the same way as the majority.

In Sereboff, the beneficiaries of an ERISA-covered health insurance plan received payment from the plan to cover medical expenses resulting from a car accident. The Sereboffs later settled a lawsuit they had filed regarding the car accident, and the terms of the plan called for the money paid in settlement to go to reimburse the administrator. The Sereboffs argued that recovery of settlement funds paid by a third party—and not directly from the plan—was not "equitable relief" under 29 U.S.C. § 1132(a)(3)(B) because "[t]he money in [the beneficiaries'] investment account cannot be traced to [the plan administrator]." Respondent Reply Brief at 9, Sereboff, 547 U.S. 356, 126 S. Ct. 1869 (No. 05-260), 2006 WL 717048 at *9. The Supreme Court rejected the Sereboffs' argument because "no tracing requirement of the sort asserted by the Sereboffs applies to equitable liens by agreement or assignment." Sereboff, 547 U.S. at 365, 126 S. Ct. at 1875. In support of its position, the Court turned to "case law from the days of the divided bench"—meaning cases heard during the period when the

31

United States had two parallel courts, one of equity and one of law—which did not require the holder of an equitable lien by agreement to trace the res directly from the defendant back to the plaintiff.  Id. at 363–64, 126 S. Ct. at 1874–75 (discussing Barnes, 232 U.S. at 199–23, 34 S. Ct. at 277–78).

In its discussion of strict tracing, the Supreme Court made a distinction between equitable liens sought as a matter of restitution and equitable liens by agreement.  For equitable liens sought as a matter of restitution, strict tracing is required, but for equitable liens by agreement, it is not.  Sereboff, 547 U.S. at 364–65, 126 S. Ct. at 1875–76.  Further, the Court cabined its discussion of strict tracing to the type of tracing requirement "asserted by the Sereboffs."  Id. at 365, 126 S. Ct. at 1875.  As described above, the Sereboffs argued that equitable tracing required the plaintiff to trace the defendant's funds back to the plaintiff himself, and not to a third party.  The Supreme Court rejected this argument, and held that equitable relief was still available where the plaintiff could not "identify an asset they originally possessed, which was improperly acquired and converted into property the defendant held."  Id. (emphasis added).  Later, this Court interpreted Sereboff's tracing language to eliminate only the requirement that disputed funds originate with the plaintiff.  See Admin. Comm. for Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton, 513 F.3d 1223, 1227 n.3 (11th Cir. 2008)

32

("[T]he Sereboff Court explained that strict tracing rules need not apply for an equitable lien to properly attach to the settlement funds; that is, although the disputed funds had never actually been in the possession of the plan, the plan could seek to 'recover' property that belonged to it in good conscience under the plan agreement." (emphasis added)).

The majority relies on what I believe is a misapplication of Sereboff, accepted by some of our sister circuits, to characterize the recovery of assets no longer in the defendant's possession as equitable relief. See, e.g., Cusson v. Liberty Life Assurance Co. of Boston, 592 F.3d 215, 231 (1st Cir. 2010) (determining that an insurer need not identify a "specific account in which the funds are kept or prove[] that they are still in [the defendant's] possession"). I do not accept this interpretation because the defendants in Sereboff were still in possession of the funds—the Sereboff parties had stipulated that the funds were securely set aside in an investment account. See Sereboff, 547 U.S. at 360, 126 S. Ct. at 1873. So in Sereboff the Supreme Court was never asked to decide whether a defendant's possession at the time of the suit was necessary for an action in equity.

33

## D. EQUITABLE RELIEF IS NOT AVAILABLE AGAINST DEFENDANTS WHO DO NOT HAVE POSSESSION OF THE DISPUTED PROPERTY.

If the settlement had instead been issued to Ms. Elem in the form of a luxury automobile, AirTran could exercise its equitable lien only by locating the automobile or the proceeds of the sale of the automobile and suing the person who had possession. It would make no sense to sue in equity to recover a car from someone who does not have it. And, the result is the same when a plaintiff brings a claim for "other equitable relief" without establishing who is in possession. At core, a plaintiff's ability to seek equitable relief over a res cannot be separated from the ongoing existence and location of that res or its proceeds. More to the point, we, as a court sitting in equity, cannot reverse engineer what happened to the plaintiff's property by assuming that one or more of the named defendants now has it. Yet, that is what the majority does here.

The District Court's grant of summary judgment entitled AirTran to recover the $131,704.28 it paid for Ms. Elem's medical expenses. The District Court later clarified that its "[j]udgment requires reimbursement of AirTran by all Defendants . . . because all three possess settlement funds that belong 'in good conscience' to the Plan.'" The majority opinion repeats this idea that the funds AirTran seeks to recover are "in 'the possession and control' of Elem and Link." Panel Op. at 8.

34

But nothing in the record supports either conclusion. To the contrary, only Ms. Elem and Link & Smith received distributions from the settlement amount, and AirTran made no assertions about whether the money remained in their possession when it filed its motion for summary judgment. The record before us simply tells us nothing about where the money is. It could be disbursed, it could be commingled, or it could be tucked under Ms. Elem's mattress. By the District Court's order, Mr. Link is liable in equity for a res that he does not possess. Whatever retribution is appropriate for Mr. Link's "sin[s]," Panel Op. at 2, it cannot lie in equity. If Ms. Elem and Link & Smith no longer have the funds, they continue to be subject to legal claims, but the equitable claim has dissipated. AirTran's claims simply fall outside the relief permitted by 29 U.S.C. § 1132(a)(3)(B).

## II.    THE DISTRICT COURT IMPROPERLY GRANTED ATTORNEY'S FEES AND COSTS.

The defendants also challenge the District Court's grant of attorney's fees and costs. Under 29 U.S.C. § 1132(g), attorney's fees may be awarded at the Court's discretion to a party who achieves "some success on the merits." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 255, 130 S. Ct. 2149, 2158 (2010). Because I view summary judgment as having been improperly granted in favor of AirTran, the District Court's related award of attorney's fees and costs should also

35

be vacated.  See Ogden v. Blue Bell Creameries U.S.A., Inc., 348 F.3d 1284, 1288 (11th Cir. 2003) (vacating award of attorney's fees after holding that the District Court improperly awarded equitable relief under ERISA).

### III.    DEFENDANTS' APPEAL OF THE DISTRICT COURT'S RULE 70 ORDER IS NOT MOOT AND THE RULE 70 ORDER WAS GRANTED TO ENFORCE AN INCORRECT JUDGMENT.

Finally, I turn to the defendants' appeal of the District Court's Rule 70 order enforcing judgment.  The majority opinion dismisses the appeal as moot because defendants paid the required amount to AirTran, eliminating any "case or controversy about the merits of the Rule 70 order."  Panel Op. at 21.  I disagree with this holding on both factual and legal bases.

The defendants' payment to AirTran was conditioned in part on the outcome of the Rule 70 order appeal.  The majority opinion highlights a purported stipulation by both parties at oral argument that the payments were subject to "the disposition of the appeal of the summary judgment and the award of attorney's fees and costs."  Id. at 6.  I heard no such stipulation at oral argument.  AirTran's counsel admitted that the payment "was subjectively conditioned on repayment if there was a final ruling in favor of [defendants]," Oral Arg. Recording at 13:36 (Feb. 28, 2014), while counsel for defendants stated that the money was "turned over to other side to hold in trust" and that if "we win, we get it [back]," id. at

36

00:52, 01:09.  At no point did the parties mention that conditional repayment was tied only to the appeal challenging summary judgment and award of attorney's fees and costs.  This matters because defendants had two separate appeals before us: one challenging the summary judgment grant and award of attorney's fees and costs, Case No. 13-11738-BB, and the other challenging the Rule 70 order, Case No. 13-14912-BB.  Everything I see indicates to me that defendants' payment was conditioned on the outcome of both appeals.  For example, in their response to AirTran's motion for contempt, Mr. Link and Link & Smith state that they "are paying the amounts claimed under protest and threat of civil and/or criminal contempt while the appeal of both Orders are pending in the 11th Circuit."  Without explicit documentation or statements to the contrary, I see no basis for putting limitations on the defendants' conditional payment in our evaluation of mootness.

I do not read our prior case law to comport with the majority's analysis.  While "payment of a judgment and an acknowledgement of satisfaction will moot an appeal from the judgment," RES-GA Cobblestone, LLC v. Blake Const. and Dev., LLC (Cobblestone), 718 F.3d 1308, 1315 (11th Cir. 2013), it is also true that "what matters is whether the parties' actions objectively manifest an intent to abandon the issues on appeal."  Id. at 1315.  In Cobblestone, we observed that the

37

appellant "never purported to reserve the right to continue to pursue [the] appeal," did not intend to "claw back the costs and fees he paid," and signed a consent agreement settling the suit to determine that the appeal was mooted. Id. at 1315–16; see also Fidelcor Mortg. Corp. v. Ins. Co. of N. Am., 820 F.2d 367, 370 (11th Cir. 1987) (mooting appeal where appellant made "no reservation allowing [him] to proceed with an appeal"); cf. Alvarez-Perez v. Sanford-Orlando Kennel Club, Inc., 518 F.3d 1302, 1305–08 (11th Cir. 2008) (declining to dismiss an appeal as moot where the parties "acted in all respects as though the appeal and cross-appeal were alive and that they were awaiting a decision" and "continued to litigate the case in this Court as though nothing had changed"); Ass'n for Disabled Ams., Inc. v. Integra Resort Mgmt., Inc., 387 F.3d 1241, 1243 (11th Cir. 2004) (holding that an appeal was not moot where appellants "specifically reserved their right to appeal" and there was no "evidence of some intent to end the litigation"). Like the appellants in Alvarez-Perez, here the defendants' "actions speak loudly enough to drown out" any indication that they regarded the conditional payment to terminate either of their appeals. 518 F.3d at 1307. Both parties briefed the Rule 70 order appeal after the payment was made to AirTran, and neither brief claimed mootness. The majority offers no evidence that the parties "objectively manifest[ed] an intent to abandon the issues" as is necessary by this Court's precedent.

38

The defendants' counsel made a statement at oral argument, only part of which is quoted by the majority to oppose the position I have taken here. See Panel Op. at 21. Though the attorney for Ms. Elem, Mr. Link and his law firm did say there was "perhaps not" a current injury resulting from that order, he went on to explain "but it could cause injury in the future such as having to come back up here again and fight that issue." Oral Arg. Recording at 02:58–03:06 (Feb. 28, 2014). Even accepting that counsel did not fully explain his clients' ongoing injury at that moment in the oral argument, the fact remains that, much like a supersedeas bond, defendants have an ongoing injury in the form of their conditional payment suspended in escrow.

The Rule 70 order appeal is not mooted by defendants' conditional payment made under threat of contempt. The District Court's grant of summary judgment improperly awarded non-equitable relief to AirTran in violation of 29 U.S.C. § 1132(a)(3)(B), thus an order enforcing that judgment cannot stand. Both the grant of summary judgment and the Rule 70 order should be vacated.

For these reasons I respectfully dissent.